UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LFOUNDRY ROUSSET SAS, and
JEAN YVES GUERRINI, Individually and
on behalf of all other persons similarly
situated,

       Plaintiffs,

  -v-                                                               No.  14CV1476-LTS-HBP

ATMEL CORPORATION, ATMEL
ROUSSET SAS, and LFOUNDRY GMBH,

       Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this action, plaintiffs Lfoundry Rousset SAS ("Lfoundry Rousset") and Jean Yves Guerrini ("Guerrini"; collectively, "Plaintiffs"), the latter on behalf of a putative class of fellow employees of Lfoundry Rousset, seek damages for alleged fraud committed by defendants Atmel Corporation ("Atmel"), Atmel Rousset SAS ("Atmel Rousset"), and Lfoundry GMBH (collectively, "Defendants").  Plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; and claims for conspiracy to violate RICO; a declaration voiding certain contracts; fraud; tortious interference with contracts; and trespass to chattels.  Defendants have moved (1) to dismiss the complaint on the grounds of <u>forum non conveniens</u>, lack of personal jurisdiction, and failure to state a claim, and (2) to strike portions of Plaintiffs' foreign law expert report.  The Court has subject matter jurisdiction of this suit pursuant to 28 U.S.C. §§ 1331 and 1367.

        The Court has carefully considered the parties' submissions.  For the following

reasons, the Court grants the motions to dismiss based on the doctrine of forum non conveniens, subject to Defendants' written confirmation that they consent to the jurisdiction of the French courts. The other asserted grounds for dismissal need not be addressed. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007) (courts may grant dismissal based on forum non conveniens without first addressing jurisdictional challenges). The motion to strike is denied as moot.

## BACKGROUND

The following summary is drawn from Plaintiffs' Amended Complaint and motion submissions, except as otherwise indicated.

Plaintiffs allege that defendant Atmel Rousset, a French subsidiary of California-based Atmel Corporation, sought to shut down its semiconductor manufacturing unit (the "Business") in Rousset, France, in order to cut costs. (Am. Compl. ¶¶ 1-2, 12, 13, 49, Docket Entry No. 62.) However, French labor law, and collective bargaining agreements with the Business' employees, required Atmel and Atmel Rousset to pay for assistance for employees facing termination, which made closing the Business expensive. (Id. ¶¶ 49-53.) Plaintiffs, the now-bankrupt operator of the Business (Lfoundry Rousset, a French company) and one of its employees (Guerrini, a French national), allege that Defendants accordingly carried out a scheme to fraudulently convey the Business to a near-insolvent buyer in order to dispose of it without paying employee assistance. (Id. ¶¶ 2, 9-10.)

Defendant Lfoundry GMBH, a German company, purchased the Business. (Id. ¶ 3.) A Washington state-based advisory firm, Atreg, helped Atmel find the buyer. (Id. ¶¶ 3, 54.) The sale was conditioned on a "positive opinion" from a representative group of the Atmel Rousset employees, called the Works Council. (Pradal Decl., Ex. A at 1, Docket Entry No. 63-

1.)  Plaintiff Guerrini was a member of the Works Council.  (Chijner Decl., Ex. E, Docket Entry No. 70-7.)  The Works Council hired a French consulting firm, Syndex, to advise it on the transaction.  (Am. Compl. ¶ 69.)  Atmel Rousset paid Syndex for this work.  (Id. ¶ 69.)  Plaintiffs allege that Syndex provided the Works Council with a deceptive report, incorporating misrepresentations by Atmel, about the transaction on February 17, 2010.  (Id. ¶¶ 69-71.)  The alleged misrepresentations included statements that Lfoundry GMBH "was a financially sound investor", that Atmel would "keep a golden share in the [Business] after its transfer to ensure that none of the [Business'] assets were transferred to Lfoundry GMBH during the first four years following the transfer" and that Atmel would enter into a supply agreement with the Business that "would provide for the purchase by Atmel of sufficient quantity [sic] of products from the [Business] to keep it afloat for at least three years at a price that would allow the [Business] to make a profitable margin of 5%".  (Id. ¶ 71.)  The Works Council met several times in late 2009 and early 2010 with representatives from Atmel Rousset, Lfoundry GMBH, and Syndex, who allegedly made similar misrepresentations.  (Id. ¶¶ 72-81.)  All of these meetings took place in France.  (Chijner Decl. ¶ 12.)  The Works Council approved the transaction on March 1, 2010.  (Am. Compl. ¶ 81.)

All or substantially all of the negotiations regarding the transaction took place in France.  (Chijner Decl. ¶ 8.)  The transaction closed by means of a Stock Purchase Agreement ("SPA") on March 4, 2010 in France.[1]  (Id. ¶ 7.)  Lfoundry GMBH purchased the Business for

---

[1] Although Plaintiffs allege that the SPA was executed in the United States (Am. Compl. ¶ 92), Defendants contend that it was executed in France on behalf of Atmel Rousset, and proffer an affidavit from the lead Atmel lawyer to that effect.  The Court is not obligated to credit Plaintiffs' unsubstantiated allegations in this regard.  See Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2d Cir. 1956) ("[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties.").  That is

one euro.  (Pradal Decl., Ex. A at 2.)  The SPA included a New York choice of law clause provision, as well as a clause requiring mediation in New York of disputes arising out of the SPA.  (Id., Ex. A at 32.)  Plaintiff Lfoundry Rousset SAS, a French subsidiary of Lfoundry GMBH, operated the Business after the sale.  (Am. Compl. ¶ 2.)

Atmel Rousset and Lfoundry GMBH also entered into several agreements ancillary to the SPA.  (Id. ¶ 97.)  They executed a four-year supply agreement ("Supply Agreement") in France on June 23, 2010.  (Chijner Decl. ¶ 10., Ex. B at 35.)  The Supply Agreement required Atmel Rousset to purchase semiconductors from Lfoundry Rousset each year.  (Id., Ex. B at 11.)  Plaintiffs allege that, despite promises from Atmel Chief Operating Officer Walt Lifsey (who signed the Supply Agreement on behalf of Atmel Rousset) that Lfoundry Rousset would profit, the Supply Agreement obligated Lfoundry Rousset to sell at a loss to Atmel Rousset.  (Am. Compl. ¶¶ 98-100.)  Atmel and Lfoundry GMBH representatives met in New York two years later, in December 2012, to discuss the future of the Supply Agreement.  (Id. ¶ 123.)  Despite the talks, the Supply Agreement ended on June 30, 2013.  (Id. ¶ 124.)

Atmel Rousset and Lfoundry GMBH also entered into an Escrow Agreement on October 22, 2010.  (Id. ¶ 118.)  JP Morgan Chase served as the escrow agent for the account, which was set up in New York.  (Id.)  Plaintiffs allege that, "[w]hile officially set up to guarantee [certain benefits for the workers] to be implemented by Lfoundry Rousset following the transfer, the escrow funds was [sic] used to pay for Lfoundry GMBH's participation in the [illegal]

---

especially true given that Plaintiffs have been afforded an opportunity to engage in jurisdiction-related discovery.

enterprise." (Id. ¶ 119.)  Both the Supply Agreement and the Escrow Agreement included New York choice of law and forum selection clauses.  (Id. ¶¶ 96-97, 118.)

On June 26, 2013, Lfoundry Rousset declared bankruptcy, and the next day a French court placed it into receivership.  (Id. ¶¶ 10, 125.)

Several legal proceedings arising out of the sale of the Business have been initiated in France.  Lfoundry Rousset's court-appointed receivers and creditors' representatives attempted, unsuccessfully, to extend Lfoundry Rousset's insolvency proceeding to reach the assets of Atmel Rousset.  (Chijner Decl. ¶ 22.)  Lfoundry Rousset also filed a fraud case against Atmel in a French court on September 16, 2013, but later requested that the court dismiss the case without prejudice, which the court did on October 6, 2014.  (Id. ¶ 23.)  Finally, there are currently pending in a French court five hundred individual labor actions by former Lfoundry Rousset employees against Atmel Rousset and Lfoundry GMBH seeking to hold those entities liable for worker assistance benefits.  (Lacovara Decl., Ex. A at 3-4, Docket Entry No. 69-1.)

Plaintiffs have stated in interrogatory responses that they filed suit in the United States because no other jurisdiction could provide them with a "RICO claim or equivalent" or the class action mechanism.  (Id., Ex. A at 6-7, Ex. B at 8-9.)  Also in interrogatory responses, Plaintiffs identified nine potential witnesses in this case, two located in New York, one in France, one in Germany, four in California, and one in Washington.  (Id., Ex. A at 7-8, Ex. B at 11-12.)  Defendants identified eighteen potential witnesses, twelve located in France, four in Germany, and two in California.  (Rubin Decl., Ex. 5 at 7, Docket Entry No. 92-5.)

DISCUSSION

The decision whether to dismiss a case based on forum non conveniens is committed to the "sound discretion" of the district court.  Pollux Holding Ltd. v. Chase

Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003). In making such a determination, the court may consider affidavits submitted by the parties. In re Optimal U.S. Litig., 886 F. Supp. 2d 298, 302-03 (S.D.N.Y. 2012).

Resolving a motion to dismiss by reason of forum non conveniens involves a three-part test. Iragorri v. United Techs. Corp., 274 F.3d 65, 70-75 (2d Cir. 2001). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citations omitted). A defendant bears the burden of showing the balance of interests is "strongly" in his favor. Iragorri, 274 F.3d at 71.

Step 1: Degree Of Deference

The deference afforded a plaintiff's choice of forum moves on a "sliding scale" based on the circumstances. Norex, 416 F.3d at 153-54. Deference increases the more the choice appears motivated by convenience, and decreases the more the choice appears motivated by forum shopping. Iragorri, 274 F.3d at 71-72. Although the Court begins with "a strong presumption in favor of the plaintiff's choice of forum," that presumption "applies with less force" when the plaintiff is foreign. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).

A number of factors are relevant to placing a plaintiff's choice of forum on the spectrum of deference. Factors that indicate appropriate convenience-oriented motivations include "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to

convenience or expense." Iragorri, 274 F.3d at 72. Factors indicating forum shopping include "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum." Id.

Here, no party resides in New York. Plaintiffs, as well as the hundreds of putative class members, are located in France. Even where some plaintiffs in a given action have connections to the United States, courts have declined to accord significant deference to the decision to sue in New York. See, e.g., Connolly v. Kinay, No. 11 CIV. 606 RJS, 2012 WL 1027231, at *6-7 (S.D.N.Y. Mar. 27, 2012) (choice of forum not entitled to "substantial deference" where seven out of nineteen plaintiffs had connections to the United States); Wilson v. ImageSat Int'l N.V., No. 07 CIV. 6176 (DLC), 2008 WL 2851511, at *4 (S.D.N.Y. July 22, 2008) (minimal deference where two of fifteen plaintiffs resided in New York), aff'd, 349 F. App'x 649 (2d Cir. 2009). Defendants Atmel Rousset, Lfoundry GMBH, and Atmel are located in France, Germany, and California, respectively.

Moreover, the "core operative facts" of this lawsuit—alleged misstatements made to the Works Council about the sale of the Business and Plaintiffs' alleged reliance on such misrepresentations—occurred in France. Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F. Supp. 2d 712, 725 (S.D.N.Y. 2011) ("very limited deference" where litigation was based on "the operations of foreign entities outside of the United States"); see also Niv v. Hilton Hotels Corp., 710 F. Supp. 2d 328, 332 (S.D.N.Y. 2008) ("substantial deference" not warranted because "none of the significant events occurred in this jurisdiction"), aff'd, 358 Fed. App'x 282 (2d Cir. 2009). Negotiation and execution of the SPA took place in France. The meetings between the

Works Council and Atmel, Lfoundry GMBH, and Syndex, during which the alleged misrepresentations were made, occurred in France. Indeed, Plaintiffs can point to only one event in New York—a 2012 attempt by Atmel and Lfoundry GMBH to negotiate an extension of the Supply Agreement—and that meeting occurred after the allegedly fraudulent sale.

Thus, unsurprisingly, a mere fraction of the potential witnesses are located in New York. Out of nine witnesses Plaintiffs identify, two are based in New York. Neither is significant. One is JP Morgan Chase, the bank that held the escrow account for Atmel Rousset and Lfoundry GMBH. The other is a lawyer, David Shaw, in the New York office of Fried Frank, the law firm that advised Atmel on the transaction. Defendants have submitted a declaration from another Fried Frank lawyer, David Chijner, however, stating that Chijner led the Atmel legal team from his Paris office. (Chijner Decl. ¶ 8.) Shaw played only an assisting role. (Id.) Moreover, Plaintiffs' witness list neglects to identify a single member of the Works Council or any employee from the consulting firm Syndex—surely important, and France-based, witnesses. Defendants additionally identify a number of witnesses in Europe and none in New York (sixteen in Europe and two in California).

In addition to the relative inconvenience of adjudicating this case in New York, there is significant evidence of Plaintiffs' forum shopping. Plaintiffs admit that they brought suit in the United States to take advantage of the RICO statute and its treble damages provision, as well as the class action device. These motivations are strong indicators of forum shopping. See, e.g., In re Herald, Primeo, & Thema Sec. Litig., No. 09 CIV. 289 RMB, 2011 WL 5928952, at *12 (S.D.N.Y. Nov. 29, 2011), aff'd, In re Herald, 730 F.3d 112 (2d Cir. 2013); Wilson, 2008 WL 2851511 at *5.

Plaintiffs argue that the New York choice of law clause in the SPA, as well as

New York forum selection clauses in the ancillary agreements, support retaining the case in New York.  However, no contract claims have been brought here.  Consequently, those contractual provisions have a "limited impact on the overall calculus."  Wilson, 2008 WL 2851511 at *4.  Given the lack of connection to New York and the explicit evidence of forum shopping, Plaintiffs' choice of forum is entitled to only "limited" deference.  Id. at *5.

Step 2: Alternative Forum

An alternative forum is adequate if (1) "it permits litigation of the subject matter of the dispute" and (2) "the defendants are amenable to service of process there."  Norex, 416 F.3d at 157.

France permits litigation of fraud claims like those asserted here.  E.g., Alfadda v. Fenn, 966 F. Supp. 1317, 1334 (S.D.N.Y. 1997) (France adequate alternative forum where claims included RICO), aff'd, 159 F.3d 41 (2d Cir. 1998); see also Norex, 416 F.3d at 158 (adequacy "does not depend on the existence of the identical cause of action," which "pertains with particular force to civil RICO actions" (internal quotation marks omitted)).  And, despite Plaintiffs' suggestion that the lack of a class action mechanism in France makes that forum inadequate, the Supreme Court has indicated that "the possibility of an unfavorable change in law" should not be given "substantial weight" in the analysis.  Piper Aircraft, 454 U.S. at 249; see also Blanco v. Banco Indus. de Venezuela, 997 F.2d 974, 982 (2d Cir. 1993) ("[T]he unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." (internal quotation marks omitted)).

Although at least the Atmel Defendants admit they are "subject to service of process in France," (Reply Br. at 4, Docket Entry No. 91), no defendant has explicitly consented to Plaintiffs bringing suit in France.  The pendency of multiple lawsuits in France concerning the

subject matter of this litigation certainly suggests that Defendants are amenable to suit in that country, but, for the avoidance of doubt, the Court will condition the dismissal of this case upon Defendants' written consent to jurisdiction there.  See, e.g., Van Bourgondien-Langeveld v. Van Bourgondien, No. 10-CV-0077 JFB WDW, 2010 WL 5464890, at *5 (E.D.N.Y. Dec. 29, 2010).  With such consent, they will have met their burden of demonstrating that France is an adequate alternative forum.

Step 3: Balancing The Private And Public Interests

Finally, the Court must balance the private and public interests in adjudicating this dispute in New York.  The private interest factors include the relative ease of access to evidence, the cost to transport willing witnesses to trial, the availability of compulsory process for unwilling witnesses, and other factors that make the trial more expeditious or less expensive.  Iragorri, 274 F.3d at 73-74.

The private interest factors support dismissal.  As explained above, the vast majority of witnesses are outside New York.  Most are in Europe.  Plaintiffs argue that New York will be a less costly destination than France for the Atmel witnesses located in California.  Offsetting any deceased cost due to that shorter flight, however, would be the greater cost to the more numerous willing witnesses who would have to travel from Europe (e.g., Lfoundry GMBH, Lfoundry Rousset, Works Council).[2]

The Second Circuit has recognized the importance of in-court witness testimony at trials involving fraud.  DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002).  Access to the most important witnesses would increase if the case is brought in France, where

---

[2]   The documentary evidence in this case is likely to be available electronically, and thus access to physical evidence has little impact on the proper forum.

compulsory process is available.  Alfadda v. Fenn, 159 F.3d 41, 48 (2d Cir. 1998).  If the case remained in New York, France-based non-party witness Syndex could not be compelled to appear.  The Court does note that, if the case is brought in France, Washington-based non-party witness Atreg would not likely be subject to compulsory process.  However, Syndex is likely a more crucial witness than Atreg: Syndex allegedly misrepresented the transaction to the Works Council, Atreg simply connected Atmel with a buyer.[3]  Similarly, although it is likely that David Shaw, the New York-based Fried Frank lawyer, could not be compelled to appear in France, Plaintiffs would gain convenient access to David Chijner, the lead Fried Frank lawyer for Atmel's legal team, who is based in Paris.  Finally, to the extent Plaintiffs argue the case should be litigated in the United States in order to ensure access to witnesses for defendant Atmel who are based in California, "it should not be difficult for the parties to make [their employees] available for trial," no matter the forum.  Ancile Inv. Co. v. Archer Daniels Midland Co., No. 08 CIV. 9492 (PAC), 2009 WL 3049604, at *5 (S.D.N.Y. Sept. 23, 2009).

The public interest factors include settling local disputes in a local forum, avoiding the difficulties of applying foreign law, and avoiding the burden on jurors of deciding cases that have no impact on their community.  Iragorri, 274 F.3d at 74.

The interest in having local disputes settled locally "weighs heavily" against the United States as a forum here.  Alfadda, 159 F.3d at 46.  The allegations concern the fraudulent circumvention of French labor laws intended to protect French workers facing termination.  The fraud was allegedly carried out through a transaction negotiated and executed in France by

---

[3] Moreover, it is not even clear that this Court could compel Washington-based Atreg to testify in New York.  See Fed. R. Civ. P. 45(c) ("A subpoena may command a person to attend a trial . . . within 100 miles of where the person . . . regularly transacts business in person . . . .").

French and German companies, with the help of a French consultant and France-based legal team.  Thus France has a "far greater interest" in this litigation than the United States, id., and, it makes little sense to have New York jurors sitting on this case, which has no relevance to their own community.

Adjudicating this case in the United States would also likely present the difficulty of applying foreign law to Plaintiffs' common law claims.  New York applies an "interest analysis" to resolve conflicts in tort cases.  In re Optimal U.S. Litig., 837 F. Supp. 2d 244, 261 (S.D.N.Y. 2011).  When the law is one that regulates conduct, the law of the jurisdiction where the tort occurred generally applies.  Id.  A definitive choice-of-law analysis is not required at this juncture, id., but it is likely that French law would apply here because the alleged fraud took place in France.

## CONCLUSION

Plaintiffs' choice of forum here is entitled to limited deference.  There is no public interest in adjudicating this dispute in New York, and the private interests weigh in favor of adjudicating it in France.  Accordingly, the motions to dismiss based on forum non conveniens are granted, without prejudice to litigation of the controversy in France, subject to each defendant's filing of an affidavit by August 5, 2015, consenting to jurisdiction in France.  Because it is unnecessary for the Court to rely on Plaintiffs' foreign law expert report, Defendants' motion to strike portions of the report is denied as moot.

This Memorandum Opinion and Order resolves docket entries 65, 68, and 96. An order of dismissal consistent with this decision will be entered upon Defendants' filing of the aforementioned affidavits.

SO ORDERED.

Dated: New York, New York
July 21, 2015

  s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge